# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| JAKE CANAVAN, § | |
| Plaintiff, § | |
| § | |
| v. § | EP-09-CV-043-KC |
| § | |
| CITY OF EL PASO, § | |
| Defendant. § | |

## ORDER

On this day, the Court considered Defendant City of El Paso's ("the City") Motion for Summary Judgment (Doc. No. 21) and Motion to Strike Portions of Plaintiff's Summary Judgment Evidence ("Motion to Strike") (Doc. No. 28). Upon due consideration, the City's Motion for Summary Judgment is **DENIED**. As it was unnecessary to consider challenged evidence in ruling upon the City's Motion for Summary Judgment, the City's Motion to Strike is **DENIED** as moot.

## I.  BACKGROUND

The following facts are undisputed. In October 2006, Plaintiff Jake Canavan ("Canavan") applied for a position as a Firefighter Trainee with the City. Pl.'s Original Pet. 2 (Doc. No. 1). According to Canavan, he "passed all the hiring criteria and was hired in February of 2007." *Id.* Included among these hiring requirements was a respiratory test. Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. A 17:23-24, Aug. 17, 2009 ("Canavan Dep.") (Doc. No. 23-2). Canavan's medical evaluation was conducted by a physician named Dr. Richard Saunders ("Dr. Saunders"). *Id.* at 18:21-24. At the time that he was evaluated, Canavan disclosed to Dr. Saunders that he had asthma. *Id.* Despite Canavan's asthma, the results of his respiratory test were normal, *id.* at 25:20-23, and Dr. Saunders determined that Canavan was physically capable of performing the job of Firefighter Trainee. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. B 36:16-21, Sept. 24, 2009 ("Sanchez Dep.") (Doc. No. 23-4).

Dr. Sanders's favorable evaluation was considered insufficient for Canavan's continued employment, however. Sanchez Dep. 54:9-55:17. Linda Ball Thomas ("Thomas"), the City's human resources director, sent then-administrative analyst Ana Sanchez ("Sanchez") to the clinic where Canavan was evaluated. *Id.* at 57:3-9. Sanchez did not speak with Canavan's diagnosing physician, Dr. Saunders. Sanchez Dep. 59:11-21. Instead, she explained the applicable medical standards to the clinic's office manager, and she received a letter from Dr. Saunders's partner, Dr. Jaime Moreno ("Dr. Moreno"). Sanchez Dep. 59:25-60:7. The letter stated that

> [a]fter further review of Mr. Canavan's chart and under the City of El Paso Fire Departments [sic] standard for possible disqualifiers which clearly states that [sic] "Bronchial asthma or history of bronchial asthma unless free of symptoms with out [sic] medication for the past five years[,]" it is found that Mr. Canavan does not meet the department's requirements.

Pl.'s Resp. Ex. 9 ("Moreno Letter").

Canavan states that he has never met Dr. Moreno. Canavan Dep. 43:17-18. Based on the information that Canavan used an inhaler to control his asthma symptoms, Dr. Moreno considered Canavan ineligible for the position of Firefighter Trainee, and Canavan was discharged from the position on or about March 1, 2007. Pl.'s Resp. to Def.'s Mot. for Summ. J. 2-3 ("Pl.'s Resp.") (Doc. No. 23).

After his discharge, Canavan returned to see Dr. Saunders. Canavan Dep. 42:25-43:1. Again, Dr. Saunders advised Canavan that he did not believe that Canavan's asthma would prevent him from doing his job. Canavan Dep. 42:4-7. Dr. Saunders then issued a second report indicating that Canavan was medically qualified for the position of Firefighter Trainee. Sanchez Dep. 54:13-19. Sanchez considered Dr. Saunders's second report insufficient to reinstate Canavan. Sanchez Dep. 8:3-10; 54:20-55:3 ("I recall the standards – that they should have been free of an inhaler or some kind of medication for a period of time, and this didn't indicate that. And, obviously, from the call from the academy, he was using an inhaler. So that didn't make sense.").

On December 29, 2008, Canavan filed his Original Petition in Texas state court, claiming

violations of the Americans with Disabilities Act of 1990 ("the ADA"). Notice of Removal 5 (Doc. No. 1) (citing 42 U.S.C. § 12101 *et seq*.). Because Canavan's complaint sounded in federal law, the City removed the case to this Court on February 6, 2009. *See generally id.* On February 10, 2009, Canavan filed a motion to remand, which was subsequently denied because this Court determined that it had lawful subject matter jurisdiction over Canavan's claim. Pl.'s Opposed Mot. to Remand ("Mot. to Remand") (Doc. No. 4); Order, March 23, 2009, ("March 2009 Order") (Doc. No. 8).

On September 21, 2009, the City filed a Motion for Summary Judgment, alleging that, because Canavan is not a qualified individual with a disability, the City is entitled to judgment as a matter of law. Mot. for Summ. J. 4. In addition, the City seeks to "recover its costs and all other relief to which it may be entitled at law or in equity." *Id.* at 7. On October 26, 2009, Canavan filed his Response, claiming that, "because Defendant regarded him as substantially limited in the major life activity of breathing [and working]," and because the City "disqualified him from a wide range of jobs" in the latter determination, he is a qualified individual with a disability. Pl.'s Resp. 2, 5. On October 30, 2009, the City filed "Defendant City of El Paso's Reply to Plaintiff's Response to Defendant City of El Paso's Motion for Summary Judgment" ("Defendant's Reply") (Doc. No. 27). In addition, the City has also filed a Motion to Strike Portions of Plaintiff's Summary Judgment Evidence. Mot. to Strike.

## II. DISCUSSION

### A. Standard

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) (2007); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). The substantive law identifies which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is

genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Ellison*, 85 F.3d at 189.

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). If the moving party meets its initial burden, the nonmoving party "must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Warfield*, 436 F.3d at 557 (quoting *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004)). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### B. Prima facie case of disability discrimination

In its Motion for Summary Judgment, the City contends that Canavan has failed to make out a prima facie case of disability discrimination because he is neither disabled nor regarded by the City as disabled. Mot. for Summ. J. 5-6. For this reason, the City argues that Canavan's claim must fail as a matter of law. *Id.*

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of

employment." 42 U.S.C. §§ 12112(a), 12111(2) (defining "covered entity" as "an employer, employment agency, labor organization, or joint labor-management committee").[1] A qualified individual with a disability is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* § 12102(1).[2]

---

[1] The City does not dispute that it is a "covered entity" under the ADA.

[2] In response to several Supreme Court opinions, which narrowly interpreted the ADA, and in order to effectuate the ADA's goal of "provid[ing] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," Congress recently amended the ADA. PUB.L. NO. 110-325, 112 STAT. 3553, 3554 (2008) ("ADA Amendments Act"). On September 25, 2008, the ADA Amendments Act was signed into law, and it became effective on January 1, 2009. *Id.* Although the purpose of the Amendments was to reinstate the "broad scope of protection" that Congress intended to afford to potential ADA plaintiffs and to reject the Supreme Court cases which improperly narrowed the protections afforded by the ADA, *id.*, the Fifth Circuit has noted that the Amendments "do not apply retroactively," and that plaintiffs whose alleged injuries occurred prior to January 1, 2009, "cannot evade" the narrow readings of the ADA embodied by prior Supreme Court holdings. *See EEOC v. Argo Distrib.*, 555 F.3d 462, 469 n.8 (5th Cir. 2009) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 475 (1999); *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313 (1994)) (stating that "[e]ven when Congress intends to supersede a rule of law embodied in one of our decisions with what it views as a better rule established in earlier decisions, its intent to reach conduct preceding the 'corrective' amendment must clearly appear," and holding that, in the case of the ADA Amendments Act, no such clear intent exists).

Thus, although the Supreme Court's narrow reading of the ADA has limited precedential value, and the ADA ought to be construed more broadly to effectuate Congress's intent, the Court must adhere to the legal principles embodied in the Supreme Court's prior opinions for purposes of evaluating the instant case. *See Argo Distrib.*, 555 F.3d at 469 n.8.

For claims arising under the ADA, the Fifth Circuit employs the burden-shifting analysis used to analyze Title VII cases. *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To establish a prima facie case of disability discrimination, a plaintiff must show that: "(1) He is disabled or is regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees." *Id.* at 279-80 (citing *Burch v. Coca-Cola Co.*, 119 F.3d 305, 320 (5th Cir. 1997), *cert. denied* 522 U.S. 1084 (1998)). Once a plaintiff has made this initial showing, the burden shifts to the employer "to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 280. If the employer articulates such a reason, the burden shifts back to the plaintiff "to establish, by a preponderance of the evidence[,] that the articulated reason was merely a pretext for unlawful discrimination." *Id.*

The City argues that Canavan has failed to establish the first prong of his prima facie case of discrimination because Canavan is neither disabled nor regarded by the City as disabled. Mot. for Summ. J. 6. Because the only argument set forth in the City's Motion for Summary Judgment is that Canavan has failed to make out his prima facie case, it is unnecessary, for the purpose of ruling on the City's Motion for Summary Judgment, to analyze whether the City has articulated a legitimate, non-discriminatory reason for its adverse employment decision. Because the Court finds that Canavan is a "qualified individual with a disability," the City's Motion is denied.

### 1. **Disabled**

The City argues, and Canavan does not disagree, that his asthma is controlled by medication. Mot. for Summ. J. 4 n.2; Pl.'s Sur-Resp. to Def.'s Supplemental Proposed Undisputed Facts ¶ 2 ("Pl.'s Sur-Resp.") (Doc. No. 39). Because Canavan's asthma is controlled by medication, the City contends that the asthma, alone, cannot support his disability discrimination claim. *Id.* (citing *Murphy v. United Parcel Serv.*, 527 U.S. 516, 522 (1999)).

As noted above, a "disability" includes a "physical . . . impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12111(8)(A). The term "physical impairment," as employed by the ADA, includes physiological disorders or conditions which affect the respiratory system. *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995) (citing 29 C.F.R. § 1630.2(h)(1)). Although "the determination of disability must be made on an individualized, case-by-case basis," *Miles-Hickman v. David Powers Homes, Inc.*, 589 F. Supp. 2d 849, 861 (S.D. Tex. 2008) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999)), several courts have held that asthma may qualify as a disability under the ADA. *See Jordan v. City of Baton Rouge*, No. 98-30989, 1999 WL 683794, at *3 (5th Cir. Aug. 3, 1999) (classifying severe asthma as a physical impairment for purposes of the ADA); *see also McGarthy v. Ridge*, No. Civ.A. 302CV1111P, 2004 WL 1542161, at *3 (N.D. Tex. Jul. 7, 2004) ("[A]sthma may be regarded as a true physical impairment for its impact on the respiratory system.").

In *Murphy*, however, the Supreme Court held that "an individual claiming a disability under the ADA should be assessed with regard to any mitigating or corrective measures employed." *Murphy*, 527 U.S. at 520. Thus, while asthma may be considered a true physical impairment, because Canavan's asthma is controlled by medication, Canavan lacks a "disability" or "physical . . . impairment that substantially limits one or more major life activities." *See* 42 U.S.C. § 12111(8)(A); *see also Murphy*, 527 U.S. at 520. The ADA, however, also includes "being regarded as having such an impairment" in its definition of "disability." *Id.* § 12102(1)(C). Thus, even assuming that Canavan's asthma does not qualify as physical impairment that substantially limits one or more major life activities, because his arguments indicate that he seeks to recover under 42 U.S.C. § 12102(1)(C), he may also show that the City regarded him as disabled. *See id.* § 12102(3).

### 2. Regarded as disabled

Canavan claims that the City regarded him as disabled. Pl.'s Resp. 2-5. The City alleges that it

did not. Mot. for Summ. J. 6. In order to be regarded as disabled, Canavan must

> (1) have a physical or mental impairment that does not substantially limit major life activities, but be treated as such by an employer; (2) have a physical or mental impairment that substantially limits one or more major life activities, but only because of the attitudes of others toward the impairment; or (3) have no actual impairment at all, but be treated by an employer as having a substantially limiting impairment.

*McInnis*, 207 F.3d at 281; *accord* 29 C.F.R. § 1630.2( l)(1)-(3); *Murphy*, 537 U.S. at 522.

Because neither the City nor Canavan dispute that Canavan has asthma, and Canavan's respiratory test results are normal, his complaint appears to fall into the first category of having a "physical . . . impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation." *See* 29 C.F.R. § 1630.2( l)(1). Thus, Canavan must show that his impairment, if it existed as perceived, would substantially limit his ability to perform one or more major life activities, and that the City made the decision to disqualify him on the basis of this perception. *See McInnis*, 207 F.3d at 281 (citing *Deas v. River West, L.P.*, 152 F.3d 471, 480 n.2 (5th Cir. 1998)).

To be perceived as "substantially limited" in a major life activity, the City must perceive Canavan as being

> (i) [u]nable to perform a major life activity in a manner that the average person in the general population can perform; or
>
> (ii) [s]ignificantly restricted as to the condition, manner or duration under which [Canavan] can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

*See id.* at 280 (citing 29 C.F.R. § 1630.2).

Canavan alleges that the City treated him as if he had substantial limitations in working and/or breathing, both of which qualify as "major life activities" for purposes of the ADA. Pl.'s Resp. 2-8; *see also* 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(i).

### a. Substantially limited in the ability to work

In support of his argument that the City viewed him as substantially limited in the major life activity of working, Canavan cites Sanchez's deposition testimony which states that, irrespective of the

two medical letters that she received from Dr. Saunders stating that Canavan was physically qualified for the position of Firefighter Trainee, Sanchez disqualified him because he used an inhaler, and she sought an additional medical report supporting his disqualification. TOO LONG *See* Pl.'s Resp. ¶ 3 (citing Sanchez Dep. 59:25-60:7). Ultimately, Canavan's disqualification was based on a report from Dr. Moreno, a physician whom Canavan had never met. Canavan Dep. 43:17-18. Canavan argues that his medical disqualification is evidence that the City viewed him as substantially limited in the major life activity of working. Pl.'s Resp. 3-5; *see also Watson v. Texas Youth Comm'n*, 269 F. App'x 498, 501 (5th Cir. 2008) (finding that the plaintiff could show that his employer treated him as having a substantial limitation to a major life activity by presenting evidence that his employer limited his job duties or undermined his return to a full range of duties).

The City correctly notes that its perception of Canavan as unqualified for the position of Firefighter Trainee alone is insufficient to show that the City viewed him as substantially limited in the major life activity of working. Mot. for Summ. J. 6. To be substantially limited in major life activity of working means that one is

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

"[A]n employer may regard an employee as impaired or restricted from one position or a narrow range of jobs without regarding him as 'disabled.'" *EEOC v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 729 (5th Cir. 2007). A plaintiff must show that his employer perceived him as significantly restricted in performing either a "class of jobs," which includes "jobs utilizing similar training, knowledge, skills or abilities, within that geographical area," or "a broad range of jobs," which "implies more than two job types." *See Bridges v. City of Bossier*, 92 F.3d 329, 334 (5th Cir. 1996). The City argues that Canavan has not made this requisite showing. Mot. for Summ. J. 6.

First, the City argues that Canavan was only disqualified from the position of Certified Firefighter Trainee. Def.'s Reply 1. "[Canavan] did not apply for and was not considered for any other position." *Id.* at 1-2. Thus, the City's disqualification of Canavan involved "too narrow a field" to support Canavan's ADA claim. *Id.* at 2, 5. Canavan, for his part, responds that the same Medical Standards which disqualified him from his position as Firefighter Trainee also applied to "all fire, police, and EMS recruits, including applicants for reinstatement to positions within those departments." Pl.'s Resp. 5.

In determining whether someone is significantly restricted in the ability to perform a "class of jobs," factors to consider include the "number and types of jobs utilizing similar training, knowledge, skills or abilities" to the person's former job, in a reasonably accessible geographical area, which are also foreclosed to the person because of his impairment. 29 C.F.R. § 1630.2(j)(3)(ii)(B). Although the City argues that the only job Canavan was considered for and disqualified from was that of Firefighter Trainee, the language of the regulations implementing the ADA make clear that an individual claiming that he was regarded as substantially limited in the major life activity of working is not required to first apply for and be rejected from a broad range or class of jobs before pursuing a claim. *See* 29 C.F.R. § 1630.2(j)(3)(ii)(B). The fact that the Medical Standards which contained the prohibition are applicable to "all fire, police, and EMS recruits, including applicants for reinstatement to positions within those departments" is evidence that Canavan may have been disqualified from a broad class of jobs. *See* Pl.'s Resp. Ex. D at A-1, A-5 ("Medical Standards").

Next, the City argues that, even if Canavan were disqualified from a class of jobs broader than Firefighter Trainees alone, the position of firefighter and EMS does not encompass the broad class of jobs necessary to support Canavan's complaint. Mot. for Summ. J. 4-6. The City relies heavily on the Fifth Circuit's opinion in *Bridges* as support for its assertion. In *Bridges*, the Fifth Circuit held that "firefighters alone do not constitute a 'class of jobs'" necessary to support a claim under the ADA.

*Bridges*, 92 F.3d at 334. The Fifth Circuit further held that even "firefighters in conjunction with municipal EMTs and paramedics who must also serve as backup firefighters" do not constitute a "broad range of jobs" needed to be regarded as substantially limited in the major life activity of working for purposes of the ADA. *Id.* at 334.

Unlike the class of jobs at issue in *Bridges*, however, the instant case appears to involve a range of jobs that is broader than firefighters and EMTs. *See* Medical Standards A-1, A-5. It also appears to include police recruits and reinstatements. *See id.* Thus, the decision to terminate Canavan as a Firefighter Trainee may have excluded Canavan from being employed in a broad range of jobs. *See Ellison*, 85 F.3d at 192 (citing *Forrisi v. Bowen*, 794 F.2d 931, 935 (4th Cir. 1986);[3] 29 C.F.R. § 1630.2(j)(3)(i)). For this reason, a finding that Canavan was not, as a matter of law, regarded as substantially limited in the major life activity of working is inappropriate.

Lastly, even if Canavan were only excluded from a narrow range of jobs, precluding his claim with respect to being perceived as substantially limited in the major life activity of working, Canavan also claims that the City regarded him as "substantially limited in the major life activity of breathing," an enumerated major life activity which does not bear the same restriction. Pl.'s Resp. 2-8.

    b.      **Substantially limited in the ability to breathe**

As noted above, Canavan also claims that the City considered him substantially limited in the major life activity of breathing. Pl.'s Resp. 2-5; *see also Miles-Hickman*, 589 F. Supp. 2d at 861-62 (citing *Homeyer v. Stanley Tulchin Assocs., Inc.*, 91 F.3d 959, 962 (7th Cir. 1996) ("[A]sthma, if proven,

---

[3] Although the case in *Forrisi* involved the interpretation of the Rehabilitation Act of 1973, and not the ADA, the Fifth Circuit has held that "the substantial equivalency of the definition of disability under the Rehabilitation Act and the ADA strongly suggests that prior constructions of the Rehabilitation Act should be generally applicable in construing the ADA definition of 'disability.'" *Ellison*, 85 F.3d at 192 n.4 (citing *Dutcher*, 53 F.3d at 727 n.14).

ha[s] the potential to constitute an impairment that substantially limits the life activity of breathing.")).

To be "regarded as" disabled,

> a plaintiff cannot simply rely on an employer's knowledge of the employee's physical condition. Rather, the plaintiff must show that the employer perceived the employee had an impairment that rose to the level of an actionable disability, namely, that the impairment caused a substantial limitation to the employee's ability to perform a major life activity.

*Miles-Hickman*, 589 F. Supp. 2d at 865.

As support for his argument, Canavan again points to the fact that he was fired because of his asthmatic condition. Pl.'s Resp. 2. Not only was the City aware of Canavan's asthma, but it believed that his condition was severe enough to warrant disqualification. Def.'s Proposed Undisputed Facts ¶ 8 (Doc. No. 21-4).

The City alleges that Canavan's claim that it considered him "substantially limited" in his ability to breathe is unfounded, arguing that "[n]ot one witness testified that the City considered Plaintiff limited in his ability to breathe" and that "the only question raised by City personnel was whether Plaintiff's use of asthma medication (an inhaler) was permitted under the National Fire Regulation and City Standards." Def.'s Reply 4. The City, however, cannot rely on its Medical Standards while ignoring the underlying rationale for those Standards. *See* 42 U.S.C. § 12112(b)(6). The ADA prohibits employers from

> using qualification standards . . . that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity.

*Id.*

The City bears the burden of establishing that the medicated bronchial asthma provision of its Medical Standards is "job-related" and "consistent with business necessity." *See Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 682 (5th Cir. 1996). As bronchial asthma is a condition which affects an individual's ability to breathe, Canavan's disqualification raises a genuine issue of material fact as to whether the City regarded him as "substantially limited" in the major life activity of breathing. Because the City has not proffered

any evidence that this provision is consistent with business necessity, it is not entitled to summary judgment on Canavan's claim.

Canavan has presented a prima facie case that he is a qualified individual with a disability under the ADA. The other elements of Canavan's prima facie case have not been challenged. As such, the burden shifts to the City to articulate a legitimate, non-discriminatory basis for his disqualification. However, the City has limited its arguments to challenging Canavan's prima facie case of discrimination, and it has presented no legitimate nondiscriminatory reason for his disqualification. For this reason, the City's Motion for Summary Judgment is **DENIED**.

### C. Motion to Strike

The City has also filed a "Motion to Strike Portions of Plaintiff's Summary Judgment Evidence" ("Mot. to Strike") (Doc. No. 28). Specifically, the City challenges Canavan's inclusion of an EEOC letter as evidence rebutting the City's Motion for Summary Judgment. Because it is not necessary to consider the EEOC letter when ruling upon the City's Motion for Summary Judgment, the City's Motion to Strike is **DENIED** as moot.

## III. CONCLUSION

For the reasons stated above, the City's Motion for Summary Judgment (Doc. No. 21) is **DENIED**. The City's Motion to Strike (Doc No. 28) is **DENIED** as moot.

**SO ORDERED**.

**SIGNED** on this 27th day of January, 2010.

_/s/ Kathleen Cardone_
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE